UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

UNITED STATES OF AMERICA

    Plaintiff

v.

JASON MITCHELL PYLE

    Defendant.
_____/

Crim. Case No. 15-00054

Hon. Sean F. Cox

## **OPINION & ORDER
ON DEFENDANT'S SENTENCING OBJECTIONS**

Defendant Jason Mitchell Pyle ("Defendant") pleaded guilty to possessing a firearm, in violation of 18 U.S.C. § 922(g)(1).  Currently before the Court is Defendant's objection to the Presentence Investigation Report's Sentencing Guidelines computation.  Defendant objects to the "cross reference" to attempted murder in § 2A2.1.  By cross referencing Defendant's conviction, the base offense level jumps from a level 24 to a level 33.  Defendant denies attempting to murder anyone in the incident underlying this action and instead claims that the gun accidentally discharged.

To resolve Defendant's objection, the Court must determine, by a preponderance of the evidence, whether Defendant intentionally fired the gun he possessed on July 27, 2014 at Brian McWhirter, whether Defendant attempted to fire the gun at Brian Reed, and/or whether Defendant attempted to murder McWhirter or Reed.  The Court held a sentencing hearing as to Defendant's objection on May 17, 2017.  Based upon the parties' respective written submissions, and the evidence and oral argument presented at the hearing, the Court concludes that the

Government has failed to establish, by a preponderance of the evidence, that the cross reference to attempted murder applies.

## BACKGROUND

**Presentence Investigation Report**

Defendant pleaded guilty to Count One of the Indictment, which charges Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). The probation department prepared a Presentence Investigation Report ("PSR"). The PSR lays out the offense conduct underlying Defendant's conviction. The PSR sets forth, in relevant part, the altercation that forms the basis of Defendant's conviction:

> Continuing on July 27, 2014, [Defendant] drove [Brittany Nicholson, Defendant's then fiance/girlfriend,] and his then 3-year-old son to [Brian] Reed's residence in Defendant's red pickup truck. Once near Reed's residence, [Defendant] parked at the end of Honeysuckle Road (approximately 3/4 of a mile away from Reed's residence) and exited the vehicle, and Nicholson moved to the driver's seat. [Defendant] then walked to Reed's residence. Reed and his friend, Brian McWhirter, were in the driveway of the residence. [Defendant] approached Reed and hit him in the face. As McWhirter approached [Defendant], [Defendant] brandished a firearm and fired at [sic] shot at him. The bullet passed through McWhirter's shirt, through the garage door of the residence, and lodged into the drywall. It appeared the bullet grazed McWhirter's side prior to exiting through his shirt. Subsequent to shooting at McWhirter, [Defendant] chased Reed around a vehicle in the driveway. According to Reed, [Defendant] pulled the trigger on the firearm, attempting to shoot him, but it did not fire.

(PSR at ¶ 6) (footnotes omitted).

The 2016 Guidelines Manual was used to determine Defendant's offense level. The Guideline for a violation of § 922(g)(1) is U.S.S.G. § 2K2.1. Because the PSR determined that Defendant had two prior felony convictions for either a crime of violence or a controlled substance offense, his base offense level would be 24, under § 2K2.1(a)(2). (PSR at ¶ 22).

However, the PSR also notes that § 2K2.1(c) instructs a sentencing court to apply a

"cross reference" if the defendant used a firearm in connection with the commission or attempted commission of another offense. (PSR at ¶ 24). Here, the PSR indicates that Defendant possessed a firearm in connection with attempted murder, and it therefore assigns Defendant a base offense level of 33, under § 2A2.1(a)(1). (*Id*.). After a three-level reduction for acceptance of responsibility under § 3E1.1, Defendant's total offense level is 30. (PSR at ¶¶ 30-32). The PSR assigns Defendant a criminal history category of III. (PSR at ¶ 37). Based upon an offense level of 30 and a criminal history category of III, the guideline range is 121 to 151 months of imprisonment. However, because Defendant's offense carries a maximum term of 120 months, the PSR recommends that Defendant's guideline sentence be 120 months of imprisonment.

**Defendant's Objection To PSR**

Defendant asserts one objection, relating to some of the PSR's factual findings and to the application of the cross reference for attempted murder. Defendant denies attempting to murder Brian McWhirter. It is Defendant's position that the firearm accidentally discharged during his confrontation with McWhirter. Defendant also denies attempting to shoot Brian Reed.

If the cross reference does not apply, Defendant's base offense level would be 24 pursuant to § 2K2.1(a)(2). Defendant would receive a four-level increase pursuant to § 2K2.1(b)(6)(B) because Defendant concedes that his actions would at least constitute aggravated assault. Defendant's total offense level without the cross reference would be 25, after a three-level downward departure for acceptance of responsibility. With a total offense level of 25 and a criminal history category of III, Defendant's guideline range would be 70-87 months of imprisonment.

**Sentencing Hearing**

The Court held a Sentencing Hearing in this matter on May 17, 2017. At that time, the Court allowed the parties to present evidence in support of their respective positions. The Government presented three witnesses: (1) Brian Reed; (2) Brian McWhirter; and (3) Task Force Agent Jonathan Hardison. The Government also submitted 12 exhibits. Defendant presented one witness: himself. Defendant also submitted two exhibits at the hearing.

After the hearing, the Court permitted the parties to submit supplemental briefs as to the attempted murder issue. Defendant filed a supplemental brief on May 31, 2017. The Government has not filed a supplemental brief.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Federal Rule of Criminal Procedure 32(i)(3)(B) requires the Court to rule on "any disputed portion of the presentence report or other controverted matter," at sentencing. *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007) (quoting Fed. R. Crim. P. 32(i)(3)(B)). Once a defendant raises a dispute regarding the presentence report during sentencing, the district court must "actually find facts, and it must do so by a preponderance of the evidence." *Id.* at 416.

Having heard and observed the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT[2]

---

[1]To the extent that a finding of fact is more properly a conclusion of law, and to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

[2]The Court shall only recite facts relating to the issue of attempted murder.

As a threshold matter, the Court notes that the following findings of fact are based largely on Defendant's credible testimony. The Court also found Task Force Officer Hardison to be a very credible witness and will refer to his limited testimony if necessary. The Court also notes that Brian Reed and Brian McWhirter were not particularly credible witnesses. The transcript of the hearing illustrates that both Reed and McWhirter's testimony contain inconsistencies as to the events that transpired on the date in question.

At the time of the underlying incident, Defendant was in a relationship with a woman named Brittani Nicholson. Nicholson informed Defendant that she was involved in a feud on Facebook with her ex-boyfriend, Brian Reed. Defendant decided to confront Reed. Defendant admitted that he intended to give Reed an "ass whooping" for the comments made to Nicholson.

Thus, on July 27, 2014, Defendant drove to Reed's residence. When Defendant arrived to the residence, he approached Reed on the driveway and they exchanged words. Defendant eventually struck Reed in the face. As Defendant took a few steps back, he noticed McWhirter approaching from around a truck that was parked on the driveway. At this point in time, Reed was facing Defendant and McWhirter was at Defendant's side.

Defendant then pulled a gun from his pocket. Defendant testified that he brought the gun in the event that he needed protection. Defendant proceeded to point the gun at Reed, then at McWhirter, then back at Reed. McWhirter was approximately three steps from Defendant at this point in time. Defendant then "charged" at McWhirter (with the gun still in his hand). As Defendant charged McWhirter, he positioned the gun in an upward position so that he could hit McWhirter over the head with it. Both Defendant and McWhirter's arms were up as a struggle between them ensued. When Defendant went to hit McWhirter on the head, McWhirter's hand

5

went up. Because Defendant's finger was close to the trigger, the gun accidentally discharged. McWhirter then ran into Reed's garage.

Defendant proceeded back toward Reed, and circled behind Reed several times before leaving. Defendant did not attempt to shoot at Reed during this encounter.

## CONCLUSIONS OF LAW

At common law, "an attempt to commit murder requires a specific intent to kill." *Braxton v. United States*, 500 U.S. 344, 351 (1991). Thus, in order to employ the attempted-murder cross reference, the Court must find by a preponderance of the evidence that Defendant intended to kill Brian Reed or Brian McWhirter. *See United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006). In light of Defendant's objection, the burden is on the government to establish that Defendant had the requisite intent.

Based upon the evidence presented at the hearing, the Court concludes that the Government has failed to satisfy its burden. Defendant's credible testimony establishes that: Defendant did not go to Reed's residence with the intent to shoot him; that Defendant only pulled the gun out *after* McWhirter appeared from behind the truck; that the gun accidentally discharged during the altercation between Defendant and McWhirter; and that Defendant did not attempt to shoot Reed.

The Court also finds Defendant's proximity to McWhirter worth noting. Had Defendant intended to shoot McWhirter, he could have done so without having to "charge" at him. Both Defendant and McWhirter testified that Defendant was merely steps away from McWhirter before the struggle ensued. Another fact worth noting is that the gun discharged *during* Defendant's altercation with McWhirter. McWhirter himself even testified that he was resisting

6

and attempting to push the gun away. This further bolsters Defendant's position that the gun was discharged accidentally. And finally, to the extent that the Government argues that Defendant attempted to shoot Reed, Reed's testimony contradicts that assertion.

**CONCLUSION AND ORDER**

For the foregoing reasons, the Court concludes that the attempted-murder cross reference does not apply under these circumstances. As such, Defendant's base offense level is 24 pursuant to U.S.S.G. §2K2.1(a)(2),[3] as opposed to 33 pursuant to § 2A2.1.

**IT IS SO ORDERED.**

                                          s/Sean F. Cox
                                          Sean F. Cox
                                          United States District Judge
                                          Sitting by Special Designation

Dated: June 12, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 12, 2017, by electronic and/or ordinary mail.

                                          s/Jennifer McCoy
                                          Case Manager

---

[3] Defendant does not object to the PSR's determination that Defendant committed the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense.